**Bobby Cornelious RHODES, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–94–529–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 29, 1995.

244

Terry M. Casey, Casey & Colosi, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Asst. Chief Appellate Div., Chuck Mallin, Asst. Chief Appellate Div., C. James Gibson, Asst. Crim. Dist. Attorney, Bill Durkin, Asst. Crim. Dist. Attorney, Fort Worth, for appellee.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

A jury convicted appellant Bobby Cornelious Rhodes of possession of a controlled substance with intent to deliver and assessed punishment at ninety-nine years in prison. Rhodes brings two points of error: (1) the trial court erred in overruling his motion to suppress; and (2) the evidence was insufficient to show that Rhodes possessed a controlled substance with intent to deliver. We affirm the trial court's judgment.

### FACTS

Shortly before 11:00 p.m. on April 20, 1994, Fort Worth Police Sergeant McGuirk and Officer Shunk, who were assigned to the gang task force patrol on Fort Worth's east side, saw a 1983 model, four-door Oldsmobile backing through an intersection near the 4000 block of Fitzhugh, a high-crime area known for gang activity. Officer Shunk, who was driving the patrol car, turned on his overhead lights to stop the Oldsmobile for the traffic violation. The Oldsmobile accelerated down San Rose and turned west on Forbes.

Sergeant McGuirk testified, and Officer Shunk confirmed, that the passenger door of the Oldsmobile opened and that the passenger dropped a Crown Royal bag onto the street. Officer Shunk slowed the patrol car, and Sergeant McGuirk opened his door, grabbed the Crown Royal bag, and dropped it on the floorboard of the patrol car without looking in it, although he suspected that it contained narcotics contraband. Officer Shunk agreed with Sergeant McGuirk's suspicion. Both Sergeant McGuirk and Officer Shunk testified that from their experience, Crown Royal bags are frequently used to carry narcotics.

The police continued their pursuit of the Oldsmobile and even turned on their siren because the Oldsmobile accelerated after the Crown Royal bag had been dropped. Eventually, the Oldsmobile stopped in a northbound lane of Donnelly. The driver opened his door and fled through a nearby residential area, and Officer Shunk chased him on foot. Rhodes, who was on the passenger side, remained in the car. Sergeant McGuirk ordered Rhodes to get out of the car. When asked, Rhodes gave his name to Sergeant McGuirk, but he said that he did not know who the driver was.

Sergeant McGuirk said that he was concerned about his safety and the safety of his partner, who was chasing the driver, so he handcuffed Rhodes and began walking Rhodes to the patrol car:

[PROSECUTOR]: Why did you handcuff him?

A. Well, I was concerned about my safety. I was concerned about the officer's safety that was on foot in pursuit of the another [sic] individual and I didn't want to worry about having to have this gentleman here loose while I was concerned about the safety of the other officer that was on foot pursuit. We were in—it was nighttime. We were in a high-crime area. They had been—to me, it was suspicious activity what had been going on, . . .

. . . .

A. I felt a suspicious—or I thought their activity was very suspicious and I was concerned about their activity and I was concerned about the safety of the other officer that was pursuing the driver.

Officer Shunk testified in similar fashion:

Q. How would you—would you classify that situation as a potentially dangerous situation when you're running after one guy and you have one officer there?

A. Potentially volatile, yes, sir, I would.

Q. And is that a standard procedure to handcuff a guy for everybody's safety until things settle down?

A. Taking into account what had transpired prior to the stop, the area that we were at, the conditions, lighting conditions, and the officer by himself, yes, sir, that is potentially dangerous. And for officer's safety, that's what we're taught to do.

At the motion to suppress hearing, Sergeant McGuirk explained that he was detaining, not arresting, Rhodes when he handcuffed him:

Q. Were you placing him under arrest at that time?

A. I was obtaining [sic] him to investigate what was going on.

Sergeant McGuirk specifically said that by handcuffing Rhodes, he was not placing him under arrest for any offense, including the offense of littering, although he stated that Rhodes had committed that offense when he dropped the Crown Royal bag out of the car.

After handcuffing Rhodes and as they were walking to the patrol car, Sergeant McGuirk noticed Rhodes drop a clear ziplock bag to the ground. Wary of Rhodes' reaction if he bent down to pick up the bag, Sergeant McGuirk left it on the street but kept it in plain view. When Officer Shunk, who had been unable to apprehend the driver, returned to the police car, Sergeant McGuirk retrieved the ziplock bag, which contained several blue ziplock bags that had in them what appeared to be crack cocaine. Sergeant McGuirk then arrested Rhodes for possession of a controlled substance and took him to jail. When Rhodes was searched at the jail, police found in his right front vest pocket another blue ziplock bag containing a white residue.

Fort Worth Police Department Criminalist John Harris said that the cocaine in the ziplock bag dropped by Rhodes measured 2.09 grams and that the bag found on Rhodes at the jail did not contain any controlled substance. According to Sergeant McGuirk, the amount of cocaine Rhodes dropped was consistent with delivery rather than individual consumption. The Crown Royal bag contained $321 in one-dollar bills.

### INVESTIGATIVE DETENTION OR ARREST?

■ In his first point of error, Rhodes complains that the trial court erred under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution by overruling his motion to suppress the cocaine. Because Rhodes has not separated his arguments under the United States Constitution and the Texas Constitution, we will only address his first point of error under the United States Constitution and Texas decisions applying the United States Constitution. *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

Rhodes asserts that the cocaine was only discovered after his illegal arrest and that the cocaine should have been suppressed as "fruit of the poisonous tree." Rhodes contends that the arrest was illegal because Sergeant McGuirk never articulated facts or circumstances that gave him probable cause to make the arrest.

■ The Fourth Amendment does not forbid "all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669, 1680 (1960). Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). An occupant of an automobile is just as subject to an investigative detention as is a pedestrian. *Gearing v. State*, 685 S.W.2d 326, 328 (Tex.Crim.App.1985) (op. on reh'g) (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)); *Brown v. State*, 830 S.W.2d 171, 175 (Tex.App.—Dallas 1992, pet. ref'd). In connection with the detention, an officer may conduct a pat-down search for weapons. *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. The detention can include a temporary seizure. *Florida v. Royer*, 460 U.S. 491, 499–500, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 237–38 (1983). The justification for such an intrusion is officer safety. *Terry*, 392 U.S. at 23–24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–08.

■ To support the intrusion, the law enforcement officer must have specific and articulable facts that, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983). The officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indi-

cation that the activity is related to a crime. *Johnson,* 658 S.W.2d at 626.

The circumstances that raise suspicion that illegal conduct is taking place need not be criminal in themselves; rather, they may include any facts that would in some measure render the likelihood of criminal conduct greater than it otherwise would be. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991). "Among the circumstances that can give rise to reasonable suspicion are the [officer's] knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices." *United States v. Mendenhall,* 446 U.S. 544, 563, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497, 515 (1980).

Whether a detention is an actual arrest or an investigative detention depends on the reasonableness of the intrusion under all of the facts. *See, e.g., United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 615 (1985).

Rhodes, citing *Burkes v. State,* 830 S.W.2d 922 (Tex.Crim.App.1991) and *Pickens v. State,* 712 S.W.2d 560 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd), claims that he was placed under arrest when Sergeant McGuirk handcuffed him and began moving him toward the patrol car. At the suppression hearing, the trial court, the prosecutor, and defense counsel all were of the opinion that Rhodes was under arrest when he was handcuffed. But Sergeant McGuirk testified that he was not arresting Rhodes when he handcuffed him. The officer's opinion is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place. *Amores v. State,* 816 S.W.2d 407, 412 (Tex.Crim.App.1991).

In *Burkes* several officers were responding to a tip that drugs could be found in a nightclub area. Past experience had taught the police that the arrival of a marked police car at the front of the nightclub area would sometimes cause drug-carrying persons to flee through the rear. Two of the officers therefore positioned themselves on opposite corners of a dark field behind the nightclub area. When the police car arrived in front of the clubs, several persons, one of whom was Burkes, ran from the back of the buildings. One of the officers encountered Burkes, shined a flashlight in his eyes, commanded him to lie on the ground, rolled him over, handcuffed him, patted him down, and did not ask him any questions about why he had been running across the dark field. During the pat down, the officer found cocaine. *Burkes,* 830 S.W.2d at 923.

The officer testified that Burkes was under arrest when he was handcuffed. The *Burkes* court found this admission, although only a factor, to be persuasive. *Id.* at 925. It held that the stop of Burkes was an arrest, not an investigative detention. *Id.*

*Burkes* relied heavily on *Amores,* 816 S.W.2d 407, where the court held that the detention of the suspect was an arrest, not an investigative stop, where the officer, responding to a suspected burglary call, blocked the defendant's car with his police car, drew his gun, ordered the defendant from his car at gunpoint, ordered him to lie face-down on the pavement with his hands behind his back, and threatened to shoot him if he did not obey. *Id.* at 410–11. The officer did not ask any questions before or during the search of the suspect and his car—no investigation was conducted—which led the court to hold that the detention could not be characterized as a *Terry* stop; it was an arrest. *Id.* at 412. The holding was not based on the fact that the officer had handcuffed the suspect. *Id.* at 410 n. 3.

In *Pickens,* 712 S.W.2d 560, an officer observed the defendant walking outside a motel and "looking around as if he were looking for somebody that might be watching him, for whatever reason." When the officer next saw the defendant driving a car through the motel parking lot "very slow," he had a hunch that "something was going on." When the defendant put his car in reverse, the officer thought that the defendant was attempting to evade him. Deciding that "there was enough to check him out," the officer called the defendant over to question him. The defendant responded that he was looking to get a motel room. Because there was a history of burglaries at the motel, the officer informed the defendant that the police need-

ed "to check him out." When a back-up officer arrived, the defendant was handcuffed and placed in a police car.

A search of the motel revealed that there had been no burglaries, so the officers let the defendant out of the police car. One of the officers then found a check in the patrol car that led to the defendant's forgery conviction.

The court began by initially stating that the "handcuffing of appellant and his placement in the patrol car is equivalent to arrest." *Id.* at 562 (citing Tex.Code Crim.Proc. Ann. § 15.22 (Vernon 1977)). That approach—jumping straight to the definition of arrest—has been rightly criticized. *See Francis v. State,* 896 S.W.2d 406, 411 (Tex. App.—Houston [1st Dist.] 1995, pet. granted). The court then proceeded to answer the question of "whether the arresting officer had sufficient reasonable suspicion to initiate the investigatory stop that preceded the arrest and the discovery of evidence." *Pickens,* 712 S.W.2d at 562. The court found that the officer's suspicion did not justify the initial detention because the defendant's behavior was consistent with innocent behavior, and therefore the detention was illegal. *Id.*

The State responds that Rhodes' detention was either an investigative stop supported by reasonable suspicion or an arrest supported by probable cause and that the trial court acted correctly in refusing to suppress the cocaine. The State relies on Sergeant McGuirk's testimony at the suppression hearing that his intention in handcuffing Rhodes was not to place him under arrest, but to detain him for his safety and the safety of Officer Shunk.

The State cites *Mays v. State,* 726 S.W.2d 937 (Tex.Crim.App.1986), *cert. denied,* 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988), where the Court of Criminal Appeals held that an officer's conduct in handcuffing two men did not amount to an arrest and was reasonable under the circumstances. *Id.* at 944. In *Mays,* the lone officer had been called to a burglary of an apartment in progress. When he arrived, he noticed two men, one standing in front of the apartment door and the other sitting on the steps leading up to the apartment. The officer asked the man on the steps if he was with the other man.

He said that he was. The officer then asked both men to come down to where he was. As they walked toward him, the officer told them that he would have to frisk them.

The officer frisked the two men and handcuffed them. The officer testified that he handcuffed them for his own protection, "[d]ue to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was all alone, and two of them, and they was both bigger than I was." A second officer then arrived and watched the suspects while the first officer questioned the apartment resident who had called the police. The officer then questioned the suspects, which led to their arrest for car theft and the defendant's eventual capital murder conviction.

In response to the defendant's claim that his arrest was illegal, the court held that the facts "clearly demonstrate reasonable suspicion rapidly escalating to probable cause to arrest." *Id.* Specifically, the court held that the officer's conduct in frisking the two men and handcuffing them was reasonable and justified under the circumstances. *Id.*

■ Contrary to Rhodes' assertion, there is no bright-line test providing that handcuffing is the equivalent of arrest. "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Sharpe,* 470 U.S. at 685, 105 S.Ct. at 1575, 84 L.Ed.2d at 615. *Mays* and other decisions finding the use of handcuffs to be reasonable as part of an investigative detention militate against such a test. *E.g., Nargi v. State,* 895 S.W.2d 820, 822–23 (Tex.App.— Houston [14th Dist.] 1995, pet. granted); *Hilla v. State,* 832 S.W.2d 773, 778 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Brown,* 830 S.W.2d 171; *Garcia v. State,* 769 S.W.2d 345 (Tex.App.—Houston [1st Dist.] 1989, no pet.). In *Brown,* the Dallas court, citing *Mays,* even stated: "It is permissible for an officer to handcuff an individual being detained when the officer reasonably believes it is necessary to do so to protect himself." *Brown,* 830 S.W.2d at 175. Many federal decisions are in agreement. *E.g., United*

*States v. Smith,* 3 F.3d 1088, 1094–95 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *United States v. Sanders,* 994 F.2d 200, 205–08 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 408, 126 L.Ed.2d 355 (1993); *United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir.1993); *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446, 447 (1983).

▮▮▮ Instead, each case must be determined on its own facts. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979). Moreover, courts should not second-guess police officers' conduct from the "peace of a judge's chambers." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455 (1989). Allowance must be made for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456.

▮▮▮ At a suppression hearing, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). We, as the reviewing court, will not engage in a new factual review; we will only consider whether the trial court properly applied the law to the facts. *Id.* The question is not whether we would have interpreted the facts in the same manner as the trial court, nor whether we would have ruled as the trial court did.

▮▮▮ The finding of the trial court will not be disturbed absent an abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985). The trial court's ruling will stand if it can be upheld on any valid theory, whether or not such a theory was argued before the trial court. *Romero,* 800 S.W.2d at 543; *Lewis v. State,* 664 S.W.2d 345, 347 (Tex.Crim.App.1984); *cf. McFarland v. State,* 845 S.W.2d 824, 846 n. 15 (Tex.Crim.App.1992) ("if a trial judge's decision to admit certain testimony is correct on any theory of law applicable to the case, it will be upheld. This is true whether or not he states the correct ground."), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

We conclude that the trial court did not abuse its discretion in overruling Rhodes' motion to suppress. We disagree, however, with the trial court's characterization of Rhodes' detention as a warrantless arrest based on probable cause. The facts in this case are most similar to *Mays.* Under the law discussed above, Sergeant McGuirk made an investigative detention of Rhodes under *Terry* and its progeny, which was further warranted when Rhodes dropped the cocaine in Sergeant McGuirk's presence.

▮▮▮ Under the facts and circumstances of this case, the detention and handcuffing of Rhodes was reasonable and justified. Late at night in a high-crime area, the officers observed the car that Rhodes was in commit a suspicious traffic violation—backing through an intersection. The car then attempted to evade the police.

Even though it was the driver who committed two crimes—the traffic violation and evading arrest—in the officers' presence, Rhodes' conduct was not consistent with innocent behavior. *Cf. Pickens,* 712 S.W.2d at 562. During the brief chase, the officers saw Rhodes, the passenger, drop the Crown Royal bag out of the car. Both officers testified that in their experience, such bags are frequently used to carry drugs. Once the car stopped, the driver fled and Officer Shunk pursued him on foot in the darkness. When questioned by Sergeant McGuirk, Rhodes stated that he did not know who the driver was.

Sergeant McGuirk had a reasonable suspicion that Rhodes had engaged in unusual activity related to a crime. *See Johnson,* 658 S.W.2d at 626; *cf. Barnes v. State,* 870

S.W.2d 74, 78–79 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (op. on reh'g) (investigative detention reasonable where officer approached suspect, suspect put tissue paper in his mouth, and officer knew from experience that drug users often carry crack cocaine in tissue paper). Additionally, Sergeant McGuirk's handcuffing of Rhodes for his own safety and the safety of his partner, who was pursuing an unknown suspect (the driver) in the darkness, was reasonable and permissible. *See Mays,* 726 S.W.2d at 944; *Nargi,* 895 S.W.2d at 822–23; *Hilla,* 832 S.W.2d at 778; *Brown,* 830 S.W.2d at 175; *Garcia,* 769 S.W.2d at 347. Even though it turned out that Rhodes was unarmed and there were no weapons in the car, we will not second-guess the officer's judgment under the facts of this case. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455–56. Finally, the continued temporary seizure of Rhodes was justified by Sergeant McGuirk until his partner returned and Sergeant McGuirk could examine the ziplock baggie that Rhodes had dropped. *See Mays,* 726 S.W.2d at 944. Point of error one is overruled.

### SUFFICIENCY OF THE EVIDENCE

■ In his second point of error, Rhodes asserts that the evidence was insufficient to support his conviction for intent to deliver. He basically argues that the evidence equally supports the inference that he possessed the crack cocaine for his personal use.

■ In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

■ In determining the sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson,* 819 S.W.2d at 846. The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex.Crim.App.1991).

The jury charge read in pertinent part:

By the term "deliver," as used in this charge, means to transfer, actually or constructively, to another a controlled substance, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. A person's intent may be inferred from words spoken and acts done.

The State points to the following evidence to support Rhodes' conviction:

- The baggie that Rhodes dropped contained 2.09 grams of cocaine, including adulterants and dilutants.
- The cocaine was packaged in several individual baggies contained within the larger baggie.
- A cellular phone was found in the car.

- The Crown Royal bag thrown out of the car by Rhodes contained $321 in one-dollar bills.
- Sergeant McGuirk testified that the quantity of cocaine dropped by Rhodes was consistent with delivery, rather than personal use.
- Sergeant McGuirk testified that the manner of packaging of the cocaine was not consistent with personal use.

 Intent to deliver may be proved by circumstantial evidence, including evidence surrounding its possession. *Reece v. State,* 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.). Intent to deliver may be inferred from the quantity of drugs possessed, *Branch v. State,* 599 S.W.2d 324, 325–26 (Tex.Crim.App. [Panel Op.] 1979), and it may also be inferred from the manner in which the drugs are packaged. *Castillo v. State,* 867 S.W.2d 817, 821 (Tex. App.—Dallas 1993), *vacated on other grounds,* 913 S.W.2d 529 (Tex.Crim.App. 1995).

The cases relied on by Rhodes, *Turner v. State,* 681 S.W.2d 849 (Tex.App.—Dallas 1984, pet. ref'd) and *Greer v. State,* 783 S.W.2d 222 (Tex.App.—Dallas 1989, no pet.), are both distinguishable because of their absence of testimony connecting the facts of possession to evidence of dealing. *See Branch v. State,* 833 S.W.2d 242, 244 (Tex. App.—Dallas 1992, pet. ref'd) (distinguishing *Turner*). In the case before us, Sergeant McGuirk provided that testimony. Moreover, *Turner,* which relied on a test that must exclude an "equally consistent inference," and *Greer,* which relied on *Turner,* have been implicitly overruled by *Geesa,* 820 S.W.2d at 161. *Castillo,* 867 S.W.2d at 821 n. 1. The *Reece* court addressed the same issue before us:

> Appellant contends that the testimony reflects appellant's possession to be as consistent with personal use as with delivery. Even if the record supports conflicting inferences, we must "presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."

*Reece,* 878 S.W.2d at 325–26 (quoting *Matson,* 819 S.W.2d at 846).

Based on the amount of cocaine possessed by Rhodes, the manner in which it was packaged, the officer's testimony about those facts, and the amount of money thrown out of the car by Rhodes, a rational jury could find that Rhodes possessed the cocaine with intent to deliver. *See, e.g., Mack v. State,* 859 S.W.2d 526, 529 (Tex.App.—Houston [1st Dist.] 1993, no pet.); *Gabriel v. State,* 842 S.W.2d 328, 331–32 (Tex.App.—Dallas 1992) (op. on reh'g), *aff'd,* 900 S.W.2d 721 (Tex. Crim.App.1995). Point of error two is overruled.

The judgment of the trial court is affirmed.