COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-038-CR
 
 
PATRICK JORDAN                                                                 APPELLANT
 
V.
 
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM CRIMINAL DISTRICT COURT 
NO. 2 OF TARRANT COUNTY
 
------------
 
OPINION*
 
------------
        Appellant 
Patrick Jordan appeals from his conviction for possession of a controlled 
substance with intent to deliver.  In two issues, he contends the evidence 
is legally and factually insufficient to prove intent to deliver.  We 
affirm.
Factual Background
        On 
November 11, 2000, Officer Stephen Myers observed a car make a right turn 
without signaling. Officer Myers began to follow the car, which was going 
“extremely fast.”  After turning onto another street, the car pulled 
over to the right side of the road, and appellant got out.  The car then 
continued down the street.
        As 
Officer Myers passed appellant, he saw appellant drop a plastic baggie about the 
size of a small softball on the street.  The baggie had white chunks inside 
it.  Appellant and Officer Myers were both traveling eastbound on the 
street.  Officer Myers turned around and parked his car facing 
westbound.  Appellant had changed directions and was now walking 
westbound.  Officer Myers saw appellant pick up the baggie off the street.
        As 
Officer Myers approached appellant on foot, appellant put the baggie in his 
right hand and then put his right hand in front of his pants waistband.  
Officer Myers told appellant to stop and take his hands away from his 
waistband.  Officer Myers had to repeat his command two or three times 
before appellant complied.  Officer Myers shook appellant’s waistband, 
and the baggie fell out of his pants.  Appellant said the baggie did not 
belong to him. Appellant was not carrying any weapons.
        The 
baggie contained fourteen capsules with white powder, which were later 
determined to be cocaine, and sixteen capsules with brown powder, which were 
later determined to be heroin.  It also contained two smaller bags 
containing crack cocaine.  The total amount of cocaine powder in the 
fourteen capsules weighed about 1.65 grams, and the total amount of heroin in 
the sixteen capsules weighed about 1.94 grams.  One of the smaller bags 
contained about .17 grams of crack, and the other contained about .28 grams.
        At 
appellant’s trial, Officer Myers testified that the area in which he stopped 
appellant was a high crime area and that drug houses were typically located on 
that street.  He testified that it is common to package narcotics in 
baggies and in capsules.  Officer Bruce Blaisdell, a narcotics officer with 
the Fort Worth Police Department, also testified that he had seen cocaine and 
heroin sold in capsule form before.  Each capsule is generally sold for 
about $10.  Officer Blaisdell said it is common to find a drug dealer with 
a variety of drugs in his possession because not all customers want to buy the 
same drugs.
        Officer 
Blaisdell testified that the fourteen cocaine capsules were worth about $140, 
the sixteen heroin capsules were worth about $160, and the two bags of crack 
were worth about $30 to $35.  Thus, appellant was carrying approximately 
$330 to $335 worth of drugs.  Officer Blaisdell also testified that typical 
drug users buy only one to four capsules at a time and that they do not normally 
buy large quantities because they do not want to be caught with that much.  
Officer Blaisdell testified that in his eleven years with the Fort Worth Police 
Department, six of which were in narcotics, he had never seen a mere user 
possess that amount of drugs.
Standard of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 
S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to 
the responsibility of the trier of fact to resolve conflicts in the testimony, 
to weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
When performing a legal sufficiency review, we may not sit as a thirteenth 
juror, re-evaluating the weight and credibility of the evidence and, thus, 
substituting our judgment for that of the fact finder.  Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).
        To 
make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required.  Johnson v. State, 
23 S.W.3d 1, 12 (Tex. Crim. App. 2000).  A proper factual sufficiency 
review must include a discussion of the most important and relevant evidence 
that supports the appellant’s complaint on appeal.  Sims v. State, 
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        The 
court of criminal appeals has recently restated and clarified the standard of 
review to be used by appellate courts in reviewing the factual sufficiency of 
the evidence to support a conviction.  In Zuniga v. State, the court 
held  
 
There is only one question to 
be answered in a factual sufficiency review: Considering all of the evidence in 
a neutral light, was a jury rationally justified in finding guilt beyond a 
reasonable doubt?  However, there are two ways in which the evidence may be 
insufficient.  First, when considered by itself, evidence supporting the 
verdict may be too weak to support the finding of guilt beyond a reasonable 
doubt.  Second, there may be both evidence supporting the verdict and 
evidence contrary to the verdict.  Weighing all the evidence under this 
balancing scale, the contrary evidence may be strong enough that the 
beyond-a-reasonable-doubt standard could not have been met, so the guilty 
verdict should not stand.  This standard acknowledges that evidence of 
guilt can “preponderate” in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.  Stated another 
way, evidence supporting guilt can “outweigh” the contrary proof and still 
be factually insufficient under a beyond-a-reasonable-doubt standard.
 
Zuniga v. State, No. 
539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004).
Analysis
        Appellant 
contends that the evidence is legally and factually insufficient to prove intent 
to deliver in that the only evidence tending to prove his intent is Officer 
Blaisdell’s opinion that the quantity of drugs possessed by appellant 
indicated an intent to deliver.  Intent to deliver can be proven by 
circumstantial evidence.  See Rhodes v. State, 913 S.W.2d 242, 251 
(Tex. App.—Fort Worth 1995), aff’d, 945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied, 522 U.S. 894 (1997); Williams v. State, 902 S.W.2d 
505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d); Reece 
v. State, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 
1994, no pet.).  Courts have considered several factors in determining 
intent, including: (1) the nature of the location where the defendant was 
arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of 
packaging of the drugs; (4) the presence or absence of drug paraphernalia (for 
use or sale); (5) whether the defendant possessed a large amount of cash in 
addition to the drugs; and (6) the defendant’s status as a drug user.  Williams, 
902 S.W.2d at 507; Reece, 878 S.W.2d at 325.  Expert testimony may 
be introduced to prove intent to deliver.  See Bryant v. State, 
997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no pet.); Rhodes, 913 
S.W.2d at 251; Mack v. State, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st 
Dist.] 1993, no pet.); Branch v. State, 833 S.W.2d 242, 244-45 (Tex. 
App.—Dallas 1992, pet. ref’d).
        Here, 
appellant was arrested in a high crime area where drug houses were 
located.  While he did not possess any drug paraphernalia indicating an 
intent to sell, he also did not possess any indicating an intent to use.  
Two officers testified that the packaging of the drugs, in capsule form and in 
individual bags, indicated an intent to sell. Appellant possessed three 
different kinds of drugs.  Finally, an experienced narcotics officer 
testified that the amount of drugs possessed by appellant indicated an intent to 
sell.
        The 
dissent argues that these facts are as consistent with an intent to possess as 
an intent to deliver.[1]  However, in determining 
the legal sufficiency of the evidence to show appellant’s intent and faced 
with a record that supports conflicting inferences, we “must presume—even if 
it does not affirmatively appear in the record—that the trier of fact resolved 
any such conflict in favor of the prosecution, and must defer to that 
resolution.”  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. 
App. 1991).  Even reviewing the evidence in a neutral light, as required by 
the factual sufficiency standard of review, the evidence is not so weak that it 
cannot support the verdict of guilt beyond a reasonable doubt, nor is there 
evidence to the contrary that is so strong as to render it impossible for the 
jury to have found appellant’s guilt beyond a reasonable doubt.
        Based 
on our review of the record and applying the appropriate standards of review, we 
hold that the evidence is legally and factually sufficient to support the 
jury’s verdict.  We overrule both of appellant’s issues on appeal.
        Having 
overruled appellant’s issues, we affirm the trial court’s judgment.
 
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and WALKER, JJ.
 
DAUPHINOT, J. filed a 
dissenting opinion.
 
PUBLISH
 
DELIVERED: June 17, 2004

 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-038-CR
 
 
PATRICK 
JORDAN                                                                 APPELLANT
 
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        I 
respectfully dissent from the majority’s considered and thoughtful opinion 
holding the evidence sufficient to show an intent to deliver.  There was no 
evidence that Appellant did anything to exhibit an intent to deliver the 
controlled substance in his possession.
        Appellant 
was a passenger in a car traveling in an area of drug houses.  The only 
testimony that could possibly be construed as evidence going to the specific 
intent element of the offense came from Officer Blaisdell, who testified that he 
did not know Appellant and was not present when he was arrested. Officer 
Blaisdell therefore was not a fact witness to the alleged offense.[1]  On direct examination, Officer Blaisdell testified 
as follows, in pertinent part:
 
Q. 
Now, in your experience and training as a narcotics officer, is it common or 
uncommon to find a dealer with several different types of drugs in their 
possession?
 
A. 
Very common.
 
Q. 
And why do they carry several different types of drugs?
 
A. 
When they are out there dealing, if a customer asks for a specific kind of drug, 
obviously the more various kind that you carry, the more opportunities you have 
to sell it, and pretty much the only difference between crack cocaine and 
powdered cocaine is that powdered cocaine is heated and they add some baking 
soda and some cut, which turns it into a rock form, so if you are already 
selling powder, it's very easy to make up just a little bit of crack as well.
 
Q. 
Okay. Now, the 14 caps at $10.00 for a $140.00 worth of cocaine, is that an 
amount that is typically possessed by a person who would use that for personal 
use or someone who had the intent to deliver?
 
A. 
It's typically possessed by someone who intends to sell.
 
Q. 
And what about the 16 caps of heroin, would that be someone who is possessing 
that for personal use or would they be possessing that for the intent to 
deliver?
 
A. 
Also, it's an indicator that they possess that with the intent to sell.
 
Q. 
Typically how much would you find on a user of capsules?
 
A. 
Average user, just from the houses that we set on that actually sell capsules of 
heroin and coke, we usually find anywhere from one to probably four on the 
average buyer after he leaves the house.
 
Q. 
So one to four caps are usually on a user?
 
A. 
Yes, ma'am.
 
Q. 
Do users usually buy large quantities like this?
 
A. 
No, ma'am.
 
Q. 
Do you know why?
 
A. 
The main reason is that narcotics are expensive and if you are a user, you are 
an addict, you are having to put out money for them every single day, so you can 
imagine if you are spending 30 to $40.00 a day, it gets to be a very expensive 
habit, and so usually they don't have enough money but to buy just a few 
capsules at a time, and the other reason is you don't want to get caught with it 
because, obviously, it's against the law, so typically they buy just what they 
need.

 
On 
cross-examination, Blaisdell’s testimony continued:
 
Q. 
Officer Blaisdell, most of your answers started off with typically or usually. You 
can't testify with any certainty about what [Appellant] was doing, right?
 
A. 
I can only say I have never seen a user with that amount.
 
Q. 
But you can't tell the jury that the amount that [Appellant] allegedly had on 
him was intended to be delivered, because you don't know, do you?
 
A. 
I do not.
 
 
[Emphasis 
added.]
        Officer 
Myers, the arresting officer, testified that cocaine and heroin were sold in 
capsule form on occasion.  He also testified:
 
Q. 
Okay.  Do you recall if there were any people out that day?
 
A. 
I don't recall anyone near the vicinity where he was at.
   
                . 
. . .
  
Q. 
I'm going to assume that the jury does not know what the term "drug 
house" means.  Can you explain what that is?
 
A. 
If it's what we are referring to, which I believe a drug house, basically it's a 
house where the cell [sic] of narcotics is going on and it is active, it is not 
where they are selling from the street, walking around dealing outside; it is 
where people go up to the front door to the house and they sell the drugs that 
way.
 
Officer 
Myers explained that if a dealer sold from a drug house, he would remain inside 
the house and customers would come to the door.  Clearly, Appellant was not 
inside a house or, according to Officer Myers, even in the yard near a drug 
house.  Rather, he was on the sidewalk.  If one does not sell from a 
drug house, one sells on the street.  But Officer Myers testified that no 
one was near Appellant.  Nor is there any evidence from any source that 
Appellant did anything to manifest an intent to deliver.
        Although 
Officer Blaisdell testified that he had never seen a mere user possess that 
amount of drugs, his testimony is not evidence that Appellant was not a mere 
user.  Additionally, the evidence shows a minimum of two people in the 
automobile that Appellant got out of.  Appellant’s joint possession of 
the drugs with the other person or persons in the car is consistent with the 
evidence.  Furthermore, the evidence is not inconsistent with Appellant’s 
spending his whole paycheck on drugs.
        There 
are no facts to support a finding of an intent to deliver.  Officer 
Blaisdell could have testified that in his experience people who jumped out of 
cars have just committed murder or sexual assault.  By the majority’s 
reasoning, this testimony would constitute evidence of murder or sexual 
assault.  If he had testified that people only jump from cars when they 
intend to deliver contraband in their possession, would the majority hold this 
testimony was sufficient evidence of intent to deliver?
        Possession 
of a controlled substance with intent to deliver is a delivery offense.[2]  If the legislature had intended possession of more 
than a minimum amount of drugs to constitute a delivery offense, the legislature 
would have written that intention into the delivery statute.  Instead, the 
legislature chose to assess a higher punishment for possession of increased 
amounts of controlled substances.[3]  Delivery 
offenses contain an additional mens rea, the specific intent to deliver.[4]  It is true that specific intent can be inferred 
from circumstantial evidence and a defendant’s conduct.[5]  
However, the Texas Court of Criminal Appeals defines circumstantial evidence 
as “direct proof of a secondary fact which, by logical inference, 
demonstrates the ultimate fact to be proven."[6]  
Blaisdell’s testimony is not direct proof of any facts concerning Appellant or 
the offense.  It is direct proof, at most, that in Blaisdell’s limited 
experience, persons possessing the amount and variety of drugs possessed by 
Appellant were dealers, not users.
        The 
legislature has clearly mandated a difference between the ability to deliver 
contraband and the intent to deliver.  While a person may possess a large 
amount of a controlled substance, and while that controlled substance may be 
packaged in such a way as to make it convenient to sell (and therefore buy), the 
mere fact that a person could sell the controlled substance without great 
inconvenience to himself is not evidence that he has the intent to deliver it.
        There 
is no evidence that Appellant carried any empty capsules to be filled, that he 
possessed any small baggies for packaging small amounts of contraband, or that 
he was doing anything to exhibit an intent to deliver.  There is no 
evidence that he had set himself up in a drug house or on a street corner where 
drugs were habitually sold.  There is no evidence that he attempted to pass 
off contraband to another person or that he had arranged to act as a go-between 
for two persons interested in a drug transaction.  Aside from Officer 
Blaisdell’s speculation, the only evidence is that Appellant jumped from a 
car, dropped a mixed bag of contraband, and tried to ignore a police officer.
        To 
reach the ultimate fact that Appellant specifically intended to deliver drugs at 
the time Myers spotted him, we would have to infer that Appellant is a typical 
person holding that amount and variety of drugs as described by Blaisdell.  
Based upon that inference, we would then have to infer that Appellant is a drug 
dealer.  Based upon that inference, we would then have to make a final 
inference that Appellant intended to deliver the drugs in his possession at the 
time Myers spotted him.  Such stacked inferences do not rise to the level 
of sufficient evidence in our justice system.[7] If 
they did, the presumption of innocence would be turned on its head because a 
statistician could testify in every criminal case about the percentages of 
guilty versus not guilty verdicts, and from that testimony, juries could infer 
guilt in all cases with no direct or circumstantial evidence of it in the actual 
case before them.
        An 
additional problem with the State’s proof is that there is no evidence of what 
percentage of the contraband Appellant intended for his own use as opposed to 
delivery.  Even Blaisdell’s speculation does not fill in this gap.  
Appellant was charged with intent to deliver one to four grams of cocaine and 
one to four grams of heroin.
        Because 
there is nothing other than Officer Blaisdell’s speculation to support the 
element of intent to deliver, I would hold that the State has failed to prove 
that element.  For these reasons I must respectfully dissent from the 
majority’s holding that the evidence is sufficient to show an intent to 
deliver.
        However, 
because the evidence is legally and factually sufficient to support 
Appellant’s conviction for the lesser included offenses of possession of one 
to four grams of heroin and possession of one to four grams of cocaine, and 
because the jury was charged on these offenses, I would reform the judgment to 
reflect such conviction and remand the case for a punishment hearing.
   
  
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
 
PUBLISH
DELIVERED: 
June 17, 2004


NOTES
* Comment:  Majority by Justice 
Livingston; Dissent by Justice Dauphinot
MAJORITY 
OPINION NOTES
1.  
The dissent contends that if the legislature had intended for possession of more 
than a minimum amount of drugs to indicate intent to deliver, it would have 
included that intention in the delivery statute. However, it also follows that 
if the legislature had intended that an intent to deliver could be inferred only 
if a person possessed a particular quantity of drugs, it would have said so. In 
the absence of such a legislatively created rule, we decline to impose 
one.  
  
DISSENTING OPINION NOTES 
1.  
See Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (holding 
that “it is not enough that the jury may disbelieve crucial evidence 
pertaining to the greater offense, but rather, there must be some evidence directly 
germane to the lesser-included offense for the finder of fact to consider 
before an instruction on a lesser-included offense is warranted”) (emphasis 
added); Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) 
(holding same), cert. denied, 523 U.S. 1079 (1998).
2.  
See Tex. Health & Safety Code 
Ann. § 481.112 (Vernon 2003).
3.  
Id. § 481.115.
4.  
Id. § 481.112.
5.  
Maldonado v. State, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999).
6.  
Taylor v. State, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984) (emphasis 
added).
7.  
Ingram v. United States, 360 U.S. 672, 680, 79 S. Ct. 1314, 1320 (1959) 
(citing Direct Sales Co. v. United States, 319 U.S. 703, 711, 63 S. Ct. 
1265, 1269 (1943)); United States v. Sultan, 115 F.3d 321, 329 (5th Cir. 
1997); Richardson v. State, 834 S.W.2d 535, 537 (Tex. App.—Houston [1st 
Dist.] 1992, pet. ref'd); see Marathon Corp. v. Pitzner, 106 S.W.3d 724, 
728 & n.8 (Tex. 2003) (citing generally Lozano v. Lozano, 52 S.W.3d 
141, 148 (Tex. 2001); Hammerly Oaks, Inc. v. Edwards, 958 S.W.2d 387, 392 
(Tex. 1997); Cont'l Coffee Prods., Inc. v. Cazarez, 937 S.W.2d 444, 450 
(Tex. 1996); and Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 
324 (Tex. 1984)); see also Ex parte Moussazadeh, 64 S.W.3d 404, 
413 (Tex. Crim. App. 2001) (“These are too many inferences stacked upon each 
other to support a finding that it was the parties' clear intention that parole 
eligibility was an essential element of the plea bargain.”), cert. denied, 
537 U.S. 813 (2002).