

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-163-CR

LAMONT TERRELL LEADON                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant Lamont Terrell Leadon appeals his conviction for possession of cocaine with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2008), § 481.112(d) (Vernon 2003). In one issue, he contends that the evidence is legally and factually insufficient to prove his intent to deliver the cocaine. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## Background Facts

On May 9, 2007, a Fort Worth Police Department (FWPD) SWAT team executed a search warrant at a "dope house" owned by Leadon's mother;[2] the team was looking for crack cocaine. The SWAT team pried open burglar bars that blocked the front door of the residence and entered inside it. Members of the team saw a loaded .38 caliber semi-automatic handgun near what appeared to be crack cocaine on a table in the living room. There was also a piece of tape on the floor in front of the table, between the table and the front door.

FWPD Officer Ken Clowers found Leadon on the kitchen floor; officers also found several other people in the residence. Officer Clowers and FWPD Officer Jimmy Ferguson, who was also in the kitchen, both saw an empty pistol holster on Leadon's belt near his right hip.

Officer Clowers put handcuffs on Leadon to temporarily detain him for questioning in connection with the search warrant and escorted him out of the house. He then turned Leadon over to the perimeter team, which is a group of officers assigned to cover the outside area surrounding the house and to interview those detained. FWPD Officer R.M. Salazar gained Leadon's consent to search him; Officer Salazar found a plastic bag containing crack cocaine in

---

[2] At the time of Leadon's arrest, his mother had rented the house to a third party.

2

Leadon's front pants pocket.  Officer Salazar saw the holster on Leadon's belt but did not take it into evidence because he did not realize there was a weapon in the house.  A chemist later weighed the cocaine at 11.94 grams.

The grand jury indicted Leadon with possession with intent to deliver cocaine of more than four but less than two hundred grams.  Leadon pled not guilty and "not true" to a deadly weapon allegation.  After the parties filed various pretrial documents and presented their cases, the jury found him guilty, but it found that the deadly weapon allegation was not true.  Leadon elected to have the trial judge determine punishment, and the judge sentenced him to twenty years' confinement.  Leadon timely filed his notice of this appeal.

**Standards of Review**

**Legal sufficiency**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

3

ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). In determining the legal sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

**Factual sufficiency**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. We cannot conclude

5

that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the appellant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

**Analysis**

The jury convicted Leadon for possessing while intending to deliver cocaine. "In a possession with intent to deliver case, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to

6

another; and (3) knew that the substance in his possession was a controlled substance." *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Leadon contends in his only issue that the evidence is legally and factually insufficient to prove his intent to deliver. We disagree.

Intent to deliver can be proved by circumstantial evidence. *See Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007); *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (explaining that such intent, for example, may be inferred from the quantity of drugs or the manner of their packaging), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997). Courts consider several factors in determining such intent, including (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Jones*, 195 S.W.3d at 288; *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno v. State*,

7

195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g).

Officers arrested Leadon in a house in which the police had previously executed several other search warrants.[3] Officer Ferguson testified that the SWAT team had a drawing of the floor plan of the interior of the house from these prior visits. Officer Clowers testified that the layout had been confirmed on repeat visits.

Leadon's mother owned the house, but neither she nor Leadon lived in it. Throughout trial, numerous uncontested references were made to the house's status as a "dope house" or a "drug house." The house had features associated with other drug houses—Officers Ferguson and Hickey testified that it had burglar bars in the windows and doors, a table facing the front door, a loaded gun on the table next to some drugs,[4] and a piece of tape on the floor in front of the coffee table. According to Officer Hickey, the tape indicated that drug sales took place in the house because the tape represented a line that

---

[3] The FWPD's visits to the house began in 2002.

[4] The State presented evidence that narcotics dealers typically carry weapons. Officer Ferguson has found weapons hundreds of times while executing search warrants on suspected drug houses. Officer Clowers stated that the gun that the officers found in this case could fit into Leadon's holster.

8

potential drug buyers could not cross, protecting the drug sellers from violence or theft.[5]  Officers found more drugs in the kitchen drainpipe.

Leadon possessed over eleven grams of crack cocaine in the form of a "cookie."[6]  Officer Salazar, who has executed two or three hundred search warrants as part of the FWPD's narcotics division, testified that a "cookie" is made by cooking cocaine into a large, round, solid mass from which dealers can easily break off pieces as small as .2 grams to sell.[7]  He also testified that the amount of cocaine that he found on Leadon was a "dealer amount" because "people . . . doing personal use don't buy large amounts like [Leadon had] and carry it around with them."  Several officers testified that the amount of cocaine found on Leadon is well over what is usually found on a mere user.

---

[5] Officer Hickey has been a police officer for sixteen years, has purchased or supervised other officers purchasing crack cocaine over one hundred times, has been into over one hundred drug houses, and has interviewed over one hundred drug users and approximately seventy-five drug dealers.

[6] A chemist testified as to the weight and nature of the drug.

[7] Other cases support testimony regarding a "cookie" of cocaine as supporting a jury's determination of intent to deliver. *See Jelks v. State*, No. 14-07-00295-CR, 2008 WL 5132655, at *3 (Tex. App.—Houston [14th Dist. Dec. 4, 2008, pet. ref'd)  (mem. op. on reh'g, not designated for publication); *Hodge v. State*, No. 11-05-00239-CR, 2007 WL 1849098, at *4 (Tex. App.—Eastland June 28, 2007, pet. ref'd) (not designated for publication).

Leadon did not possess a large amount of cash at the time of his arrest; however, Officer Salazar testified that it is common for drug dealers to separate their money from their drugs to protect themselves if they are robbed or searched by police. Officer Hickey testified likewise. In addition, Officer Hickey testified that the absence of cash in Leadon's possession could have occurred because Leadon had just bought the eleven grams of cocaine (with the intent to resell the cocaine) and therefore did not have any money on him.

Finally, while Leadon did not possess any drug paraphernalia indicating an intent to sell, he also did not possess any paraphernalia indicating an intent to merely use. *See Jordan*, 139 S.W.3d at 726. There was no testimony regarding Leadon's status as a drug user.

The evidence detailed above could have allowed a rational jury to determine beyond a reasonable doubt that Leadon had an intent to deliver the cocaine. Viewing the evidence in the light most favorable to the jury's verdict and deferring to the jury's implicit resolution of the weight of the evidence, we hold that the evidence is legally sufficient to support the jury's verdict. *See Clayton,* 235 S.W.3d at 778. We therefore overrule the legal sufficiency portion of Leadon's first issue.

Leadon also contends the evidence is factually insufficient to prove his intent to deliver. Again, we disagree.

10

Because no evidence presented at trial directly conflicted with the evidence above, the jury's determination about Leadon's intent to deliver could only be reversed for factual insufficiency if the evidence was so weak that the determination was clearly wrong and manifestly unjust. *See Lancon*, 253 S.W.3d at 705. We cannot conclude that standard has been satisfied based on the evidence presented.

The State presented testimony from numerous officers as to the events related to the search warrant and the cocaine found on Leadon. The jury heard from officers with substantial training and experience in drug-related cases, and the jury's determination was based on evidence that they implicitly found credible. This testimonial evidence was not so weak that we can say the jury's determination was clearly wrong or manifestly unjust. *Id.* at 704–05; *Watson*, 204 S.W.3d at 414–15, 417.

At trial, Leadon's counsel seemed to theorize that Leadon went to the house for his mother to investigate reports by a neighbor that something was amiss. Although his mother's testimony provides some evidence that supports this alternate explanation, the jury was free to either believe or disbelieve the conflicting theory of why Leadon was at the house. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it "is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories");

11

*Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd). Furthermore, the theory does nothing to account for the cocaine "cookie" found on Leadon.

Affording the jury's decision appropriate deference under the authority cited above, we conclude that the evidence is factually sufficient to support the jury's verdict. *See Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (explaining that "intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the accused"). We therefore also overrule the factual sufficiency portion of Leadon's only issue.

## Conclusion

Having overruled Leadon's sole issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 25, 2009