COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-411-CR
  
  
LENISKIE 
TYREE GUY                                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        Appellant 
was indicted for possession of a controlled substance, cocaine, of more than 
four grams but less than two hundred grams with the intent to deliver.  
Appellant pleaded not guilty and was tried to a jury, which returned a guilty 
verdict.  The court sentenced Appellant to twenty-five years’ 
confinement. In four issues, Appellant argues that (1) the evidence is factually 
insufficient to prove Appellant possessed cocaine; (2) the evidence is factually 
insufficient to prove Appellant intended to deliver cocaine; (3) the trial court 
erred in admitting items into evidence that had no connection with Appellant and 
therefore were irrelevant; and (4) the trial court erred in overruling 
Appellant’s objection to the State’s argument striking at Appellant over his 
attorney’s shoulder.  We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
        On 
December 3, 2002, Fort Worth police officers executed a search warrant at a 
duplex located in Fort Worth.  Narcotics detective T.L. Howard received 
information that drugs were being sold from the duplex in question.  Based 
on this tip, Detective Howard made a drug buy from the location using a 
confidential informant.  Detective Howard used this information to obtain 
the search warrant for the location.
        Detective 
Howard conducted surveillance of the location before executing the warrant, 
during which time he observed “quite a bit of traffic flow” in and out of 
the location and observed a male dressed in red out front directing vehicle and 
pedestrian traffic, whom he identified at trial as Appellant.  Detective 
Howard described that Appellant was in front of the residence and seemed to be 
directing the activity and directing people “where to park to go into the 
residence.”  Detective Howard stated that during a thirty to forty minute 
period, he observed at least twenty people enter the residence, typically 
staying only a short period of time.  In Detective Howard’s opinion, 
based on his six years’ experience in narcotics investigation, this activity 
was typical activity seen at a “crack house.”  After conducting 
surveillance at the location on the morning of December 3, 2002, Detective 
Howard proceeded to the SWAT office to conduct a briefing with the officers who 
would be executing the search warrant.  Detective Howard explained that 
SWAT officers executed the search warrant because other police officers had 
encountered an armed individual at the location in the past and gang members 
were known to frequent the location.
        Detective 
Howard testified that as SWAT executed the warrant, he and other officers 
remained away from the scene until SWAT indicated the residence was 
secure.  Once secured, Detective Howard went inside the residence and began 
to collect evidence.  Appellant had already been placed under arrest and 
was seated on a couch.  Detective Howard testified that he collected a 
“baggie that contained crack rocks” that was on the floor within a foot or 
less of Appellant’s feet. Detective Howard also collected a set of digital 
scales and a couple of razor blades from a counter directly above Appellant’s 
shoulder and within Appellant’s reach.  Detective Howard testified that 
digital scales and razor blades are typically found at locations where narcotics 
are packaged and sold.  He also recovered a dark powdery substance and a 
light cream powdery substance, and although they did not test positive for a 
controlled substance, he testified that it was typical to find other substances 
such as these that are used to mix with narcotics to increase their bulk.  
Additionally, Detective Howard recovered a “baggie of marijuana” from 
Appellant’s front jacket pocket.
        Furthermore, 
Detective Howard testified that a man and woman, who had arrived together in the 
same vehicle, were detained outside the location.  As SWAT arrived, the 
woman was exiting the location, and the man was sitting in a vehicle outside the 
location.  The woman was in possession of a glass crack pipe, and Detective 
Howard recovered a Brillo pad, glass pipe, push rod, and a yellow baggie 
containing an unidentified residue from the vehicle.  Detective Howard 
stated that the Brillo pad, glass pipe, and push rod are typically used in 
smoking crack.
        SWAT 
officer Ken Clowers was also present at the location when the warrant was 
served.  Officer Clowers stated that he was assigned to provide cover for 
the two officers who would be forcing entry into the location and that he was 
the first member of the SWAT team to approach the house.  He stated that as 
he approached, a woman was exiting the residence, and he pulled her away from 
the door. Officer Clowers stated that the door to the location was open; 
therefore, he was the first person to make entry into the residence.
        Officer 
Clowers testified that upon entering, he saw Appellant sitting on a couch. 
Officer Clowers stated that Appellant began to rise from the couch and made a 
throwing motion, dropping a clear plastic baggie out of his hand onto the 
floor.  Officer Clowers stated that he approached Appellant and pulled him 
to the ground.  Officer Clowers testified that he had constant visual 
contact of Appellant from the time he entered the location through the time he 
saw Appellant drop the baggie of crack, approached Appellant, and pulled him to 
the ground.  Officer Clowers stated that, in his professional opinion as a 
police officer, Appellant was in possession of the baggie of crack.  
Further,  Officer Clowers stated that he stood with Appellant and the 
baggie of crack until Detective Howard arrived and took possession of the 
narcotics.  In court, Officer Clowers identified the clear plastic baggie 
containing crack that was recovered from the floor by Detective Howard as the 
baggie he saw Appellant drop from his hand as Officer Clowers entered the 
location.
        H.G. 
Tebay, Assistant Commander of the Metro Narcotics Intelligence Unit, testified 
about the narcotics and evidence recovered from the location and described how 
this evidence was common to the drug trade.  He testified in response to a 
hypothetical posed by the State that the type of digital scale recovered, along 
with the razor blades, would indicate to him that these instruments were used in 
cutting up a larger amount of crack cocaine.  He testified that the amount 
of crack recovered, which was over fifteen grams, would not be in the possession 
of a “street user” because a user typically possessed approximately a tenth 
of a gram. He concluded that in his opinion the amount of crack cocaine in this 
case would be a dealer amount.
        The 
State next called Stacey Smith, a forensic scientist with the Fort Worth Police 
Department crime lab.  She testified that she tested the substance in the 
baggie that was recovered from the location and confirmed that it tested 
positive for cocaine.  She described that she conducted a presumptive test 
on every piece of the material recovered in the baggie and confirmed that the 
presumptive test indicated the possibility of cocaine.  Ms. Smith then 
stated that she tested four pieces of the substance in the baggie using a gas 
chromatograph, and each piece tested positive for the presence of cocaine.  
Ms. Smith also testified that these four pieces weighed 6.13 grams and that the 
total weight of the crack was 15.43 grams.
FACTUAL SUFFICIENCY
Standard of Review
        In 
two points, Appellant argues that the evidence was factually insufficient to 
prove that he possessed cocaine and that he intended to deliver cocaine.
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt.  Id. at 484.  There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.” Id. at 485. In other words, evidence supporting a 
guilty finding can outweigh the contrary proof but still be insufficient to 
prove the elements of an offense beyond a reasonable doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for 
that of the fact finder. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87. An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
Possession
        An 
accused commits an offense under the Texas Controlled Substances Act if he 
intentionally or knowingly possesses a controlled substance. Tex. Health & Safety Code Ann. § 
481.115(a) (Vernon Supp. 2004-05).  A person possesses a substance when he 
exercises “actual care, custody, control, or management” over the 
substance.  Tex. Penal Code Ann. 
§ 1.07(a)(39) (Vernon 2003). In order to establish the unlawful possession of a 
controlled substance, the State must prove two elements: (1) that the accused 
exercised care, control, and management over the contraband and (2) that the 
accused knew that the matter possessed was contraband. Deshong v. State, 
625 S.W.2d 327, 329 (Tex. Crim. App. 1981); Hall v. State, 86 S.W.3d 235, 
240 (Tex. App.—Austin 2002, pet. ref’d); Grant v. State, 989 S.W.2d 
428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  The issue is 
whether the evidence will support a reasonable inference that the defendant 
knowingly possessed the contraband.  Dickerson v. State, 866 S.W.2d 
696, 700 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d); Jackson v. 
State, 807 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1991, pet. 
ref’d).
        When 
the accused is not in exclusive possession of the place where the substance is 
found, it cannot be concluded that the accused had knowledge of and control over 
the contraband unless there are additional independent facts and circumstances 
which affirmatively link the accused to the contraband.  Deshong, 
625 S.W.2d at 329.  The factors to be considered in establishing an 
affirmative link include the following: (1) defendant’s presence when search 
warrant was executed; (2) whether the contraband was in plain view; (3) 
defendant's proximity to and the accessibility of the narcotic; (4) whether 
defendant was under the influence of narcotics when arrested; (5) whether 
defendant possessed other contraband when arrested; (6) whether defendant made 
incriminating statements when arrested; (7) whether defendant attempted to flee; 
(8) whether defendant made furtive gestures; (9) the presence of odor of the 
contraband; (10) the presence of other contraband or drug paraphernalia; (11) 
defendant's ownership or right to possession of the place where the controlled 
substance was found; and (12) whether the place the drugs were found was 
enclosed.  Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.—Houston 
[14th Dist.] 2001, pet. ref’d); Jones v. State, 963 S.W.2d 826, 830 
(Tex. App.—Texarkana 1998, pet. ref’d); Chavez v. State, 769 S.W.2d 
284, 288-89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref’d).
        Based 
on our review of the record, we conclude that the evidence was factually 
sufficient to prove Appellant possessed cocaine. Officer Clowers personally 
observed Appellant dropping the baggie of crack cocaine out of his hand; he 
maintained a constant visual of Appellant and the baggie; and he identified the 
baggie in court as the same one he saw on the day in question. This evidence 
alone affirmatively links Appellant to the cocaine. See Dickerson, 866 
S.W.2d at 701 (holding that testimony of officer who saw defendant holding crack 
pipe was sufficient to affirmatively link defendant to the contraband); Jarrett 
v. State, 818 S.W.2d 847, 848-49 (Tex. App.—Houston [1st Dist.] 1991, no 
pet.) (holding evidence that Appellant was arrested holding crack pipe that 
contained cocaine residue was sufficient to prove Appellant possessed 
cocaine).  And there were additional affirmative links, including evidence 
that (1) the baggie was within Appellant’s proximity and accessible to him; 
(2) marijuana was found on Appellant; and (3) drug paraphernalia was recovered 
within Appellant’s reach.
        Appellant 
presented the testimony of Janecia Dansby to contradict Officer Clowers’s 
testimony. Ms. Dansby, who was present inside the location when the warrant was 
executed, testified that she did not see Appellant in possession of the baggie, 
nor did she observe him drop a baggie on the floor. Additionally, on 
cross-examination, Officer Clowers acknowledged that he did not indicate on his 
report that he had observed Appellant drop the baggie of crack.  But he did 
reiterate that he told Detective Howard he had seen Appellant drop the 
baggie.  Ultimately, the jury was the sole judge of the credibility of the 
witnesses, and it was their duty to resolve the conflicts in the evidence. Cass 
v. Stephens, No. 08-97-00582-CV, 2004 WL 1926411, at *20 (Tex. App.—El 
Paso Aug. 31, 2004, no pet. h.).
        Based 
on our review of the record, we hold that the evidence was factually sufficient 
to establish that Appellant was in possession of cocaine. Thus, Appellant’s 
point is overruled.
Intent to Deliver
         Intent 
to deliver may be proved by circumstantial evidence, including evidence 
surrounding its possession. Rhodes v. State, 913 S.W.2d 242, 251 (Tex. 
App.—Fort Worth 1995), aff’d, 945 S.W.2d 115 (Tex. Crim. App. 1997), cert. 
denied, 522 U.S. 894 (1997).  Additionally, intent to deliver may be 
inferred from the quantity of drugs possessed and from the manner in which they 
are packaged. Id. Courts have considered several factors in determining 
such intent, including the following: (1) the nature of the location where the 
defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) 
the manner of packaging of the drugs; (4) the presence or absence of drug 
paraphernalia (for use or sale); (5) whether the defendant possessed a large 
amount of cash in addition to the drugs; and (6) the defendant's status as a 
drug user. Jordan v. State, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 
2004, no pet.). Expert testimony may be introduced to prove intent to deliver. Id.
        As 
fully set out above, the State introduced the following evidence to establish 
Appellant’s intent: (1) the testimony of Detective Howard, who testified that 
in his opinion, this location was a “crack house”; (2) testimony regarding 
the traffic flow in and out of the residence; (3) testimony that Appellant was 
seen directing traffic to the location; (4) evidence that the cocaine recovered 
from Appellant had a total weight of 15.43 grams, which in Officer Tebay’s 
opinion constituted a dealer amount; (5) evidence of drug paraphernalia located 
inside the residence within Appellant’s reach and on a person exiting the 
residence; and (6) marijuana found inside Appellant’s jacket pocket.
        Appellant 
argues there is evidence contradicting the State’s proof. Appellant states 
that only 6.13 grams of the substance in the baggie was positively tested and 
identified as crack. However, the State is not required to test each individual 
piece in the baggie to confirm the presence of cocaine. See Melton v. State, 
120 S.W.3d 339, 344 (Tex. Crim. App. 2003) (holding that under the new Health 
and Safety Code definition, the State is no longer required to determine the 
amount of controlled substance and the amount of adulterant and dilutant that 
constitute the mixture). Additionally, Appellant points to the fact that no 
money was recovered at the location; he was not identified as a drug dealer, nor 
was he identified as being involved in prior drug transactions at the location; 
no drug paraphernalia was found on him; no weapons were found at the location; 
and no one saw him deliver anything. Appellant also points to the testimony of 
his sister, who stated that she took Appellant to the location at approximately 
2:30 in the afternoon, to show that he was not directing traffic in front of the 
residence. However, Detective Howard testified that he observed Appellant 
directing traffic that morning and Appellant’s sister admitted that she had no 
knowledge of what Appellant was doing during that time. Finally, Appellant 
points us to the testimony of his sister and Janecia Dansby, who both testified 
that, in their opinions, this residence did not have a reputation as a “crack 
house.” But this testimony was contradicted by other evidence as detailed 
above.
        When 
conducting a factual sufficiency review, we must give deference to the jury’s 
determination of the credibility and demeanor of the witnesses. Zuniga, 
144 S.W.3d at 481. In addition, when faced with conflicting evidence, the 
appellate court presumes the trier of fact resolved any conflict in support of 
the verdict. Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.), cert. 
denied, 528 U.S. 1026 (1999). Based on our review of the record, we conclude 
that when considering all of the evidence in a neutral light, the jury was 
rationally justified in finding beyond a reasonable doubt that Appellant 
possessed cocaine with the intent to deliver. Thus, Appellant’s point is 
overruled.
ADMISSION OF EVIDENCE
        Appellant 
also argues that the trial court erred in admitting items into evidence that he 
contends had no connection to him and were therefore irrelevant.
        An 
appellate court reviews a trial court’s decision on whether to admit or 
exclude evidence under an abuse of discretion standard of review. Green v. 
State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. denied, 
520 U.S. 1200 (1997); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. 
Crim. App. 1990). A trial court’s determination on admissibility of evidence 
will not be disturbed unless there is a clear abuse of discretion. Werner v. 
State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986). The trial court’s 
ruling will be upheld as long as it is within the “zone of reasonable 
disagreement.” Montgomery, 810 S.W.2d at 391.
        A 
trial court’s determination of relevancy is not disturbed absent an abuse of 
discretion. Id. Evidence is relevant if it has any tendency to make the 
existence of any consequential fact more or less probable than it would be 
without the evidence. Tex. R. Evid. 
401. Intent to deliver may be proved by circumstantial evidence, including 
evidence surrounding its possession. Rhodes, 913 S.W.2d at 251.
        At 
trial, the State introduced drug paraphernalia into evidence that was seized 
from an occupied vehicle parked outside the residence. This evidence consisted 
of a Brillo pad, push rod, and glass pipe, instruments identified by Detective 
Howard as typically used to smoke crack. Appellant objected to this evidence on 
the basis that it was irrelevant to the offense charged against him and it had 
no connection with any individuals inside the residence. The trial judge asked 
if Appellant objected on any other basis, but Appellant objected only on the 
basis of relevance. The State argued that it was circumstantial evidence that 
“there’s drug delivery going on” and the paraphernalia showed that the 
person in the vehicle was a customer. The trial court initially sustained the 
objection. Subsequently, the State connected the occupant in the vehicle to the 
woman who had been detained exiting the location as SWAT prepared to enter. 
Detective Howard testified that the woman was associated with the man who was in 
the car and that she was found in possession of a crack pipe. After the State 
connected the man in the vehicle with the woman who had entered the residence, 
the State reoffered the items into evidence. Again, Appellant objected, but he 
was overruled by the trial court.
        Appellant 
argues that the evidence located in the vehicle was irrelevant because it was 
not shown to have any connection with Appellant. However, the State demonstrated 
that the evidence was relevant to the issue of Appellant’s intent to deliver 
by connecting the woman in the residence to the vehicle in which the contraband 
was found. The State argues that the drug paraphernalia recovered from the woman 
and the vehicle indicated the presence of customers who were at the residence to 
purchase crack cocaine. With the connection between the contraband in the 
vehicle and the residence, along with the scales, razor blades, and testimony 
that Appellant was seen directing traffic in front of the location, this 
evidence did have a tendency to prove that Appellant possessed crack cocaine 
with intent to deliver. Accordingly, the court was within its discretion in 
finding the evidence relevant.
        Under 
the rules of evidence, once the proponent of an item of evidence shows that the 
evidence is logically relevant to some issue in the trial under Rule 401, it is 
admissible unless the opponent of the evidence demonstrates that it should be 
excluded because of some other provision, whether constitutional, statutory, or 
evidentiary. Montgomery, 810 S.W.2d at 376. In his brief, Appellant 
refers to Rule 403, which provides that “[a]lthough relevant, evidence may be 
excluded if its probative value is substantially outweighed by the danger of 
unfair prejudice.” Tex. R. Evid. 
403. However, Appellant failed to specifically make a Rule 403 objection at 
trial, instead relying solely on relevance. Because Appellant did not raise a 
separate trial objection to the evidence based upon Rule 403, this argument is 
not properly before this court. Bell v. State, 938 S.W.2d 35, 49 (Tex. 
Crim. App. 1996), cert. denied, 522 U.S. 827(1997); see also 
Montgomery, 810 S.W.2d at 388 (holding that objection based upon Rule 403 is 
required before trial court will balance probativeness and prejudice); Long 
v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991) (expressing that when 
admitting evidence, the trial judge does not sua sponte engage in balancing the 
probative value against the prejudice but does so only upon sufficient objection 
invoking Rule 403).
        We 
therefore hold that the trial court did not abuse its discretion in admitting 
evidence of the contraband found in the vehicle outside the location. Thus, 
Appellant’s point is overruled.
JURY ARGUMENT
        Additionally, 
Appellant argues that the trial court erred in overruling his objection to the 
State’s argument to the jury that he contends struck at him over his 
attorney’s shoulder. During its closing argument, the State made the following 
remarks:
   
The scales are there.  The scales that nobody sees.  None of the 
defense witnesses got a chance to see when they’re sitting there on the 
countertop with the razor blades, sitting around a coffee table with a pot on 
it, obstructing view somewhat, sitting there for 15 or 20 minutes and nobody 
knows anybody’s names.  Folks, that’s a crack house.  Clear as 
day.  It’s a crack house.
 
The part of society you’re in now, you have the last line.  You get to go 
back and decide whether or not he’s thumbs up or thumbs down guilty for 
delivery.  It’s a difficult decision because the power’s in your 
hands.  You get to go back and tell him what he already knows, what Ms. 
Johnson knows, what Mr. Snell knows, what all his friends back here know, that 
3837 Waldorf in Fort Worth, Tarrant County, Texas, is a crack house.
 
        Appellant’s 
counsel, Mamie Johnson, objected on the basis of “throwing my name in it and 
the other attorney as to what we know.”  The objection was 
overruled.  Appellant argues that this statement was an accusation that 
Appellant’s counsel knowingly presented perjured testimony and further 
contends that the location did not have a reputation as a crack house.  
Appellant argues that this comment prejudiced the jury because it conveyed to 
them that Appellant’s counsel knew the location was a crack house and that 
counsel would do anything, even suborn perjury, to obtain an acquittal of their 
client.
        There 
are four generally permissible areas of jury argument: (1) summation of the 
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of 
opposing counsel; and (4) pleas for law enforcement. Felder v. State, 848 
S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 
(1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 
1973).  Generally, a remark that strikes at the defendant through his 
counsel is impermissible because such attacks only inflame the minds of the jury 
to the defendant’s detriment.  Wilson v. State, 938 S.W.2d 57, 62 
(Tex. Crim. App. 1996), abrogated on other grounds by Motilla v. State, 
78 S.W.3d 352 (Tex. Crim. App. 2002); Coble v. State, 871 S.W.2d 192, 205 
(Tex. Crim. App. 1993); McMurrough v. State, 995 S.W.2d 944, 947 (Tex. 
App.—Fort Worth 1999, no pet.).  Reviewing courts are especially 
disturbed about final arguments that result in uninvited and unsubstantiated 
accusations of improper conduct directed at a defendant’s attorney.  McMurrough, 
995 S.W.2d at 947.
        Practically 
speaking, it is difficult to articulate a precise rule to determine when a 
prosecutor is striking over the defense counsel's shoulders and when he is 
making a proper jury argument.  Phillips v. State, 130 S.W.3d 343, 
356 (Tex. App.—Houston [14th Dist.] 2004, State’s pet. granted, 
appellant’s pet. ref’d).  However, a prosecutor risks improperly 
striking at a defendant over the shoulder of counsel when the argument refers to 
defense counsel personally and when the argument explicitly impugns defense 
counsel’s character.  Mosley v. State, 983 S.W.2d 249, 259 (Tex. 
Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999).  In the 
present case, the State injected Appellant’s counsel personally into its 
closing argument.  We do not agree with the State that this argument was 
invited by Appellant’s counsel.  Further, this statement was outside the 
bounds of permissible jury argument.  See id. (finding 
State’s argument that referred to counsel personally and suggested counsel 
wanted to divert the jury from the truth was improper); McMurrough, 995 
S.W.2d at 947 (holding State’s argument that insinuated Appellant’s counsel 
improperly invented Appellant’s defense was improper because it was not based 
on evidence and it constituted an outside-the-record attack on defense 
counsel’s integrity).  Likewise, in the present case, the State’s 
argument brought into question Appellant’s counsel’s integrity and was not 
based on the evidence.  Thus, the argument was improper.
        Having 
found that the argument was improper, we must determine whether the argument 
constituted reversible error.  Mosley, 983 S.W.2d at 259; McMurrough, 
995 S.W.2d at 947.  Improper comments on defense counsel’s honesty do not 
amount to a constitutional violation.  Mosley, 983 S.W.2d at 259; McMurrough, 
995 S.W.2d at 947.  Such comments constitute “other errors” within Rule 
44.2(b).  Tex. R. App. P. 
44.2(b); Mosley, 983 S.W.2d at 259.  A nonconstitutional error 
“that does not affect substantial rights must be disregarded.”  Tex. R. App. P. 44.2(b); Martinez v. 
State, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).  Even when arguments 
exceed the boundaries of permissible arguments, they will not constitute 
reversible error unless they are manifestly improper, violate a mandatory 
statute, or inject new, harmful facts into the case.  Wesbrook v. State, 
29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 
(2001).  In determining whether Appellant’s substantial rights were 
affected, we consider (1) the severity of the misconduct (the magnitude of the 
prejudicial effect of the prosecutor’s remarks); (2) measures adopted to cure 
the misconduct (the efficacy of any cautionary instruction by the judge); and 
(3) the certainty of conviction absent the misconduct (the strength of the 
evidence supporting the conviction).  Martinez, 17 S.W.3d at 692-93; 
Mosley, 983 S.W.2d at 259.
        In 
analyzing the State’s comment under these factors, we conclude that the 
improper statement was harmless.  The State made one reference to 
Appellant’s counsel and did not explicitly accuse them of lying.  Nor do 
we believe that this comment rises to the level of an accusation that 
Appellant’s counsel presented perjured testimony.  Additionally, the 
State did not make this statement again, nor did it make any other reference to 
Appellant’s counsel.  See Rudd v. State, 921 S.W.2d 370, 372 (Tex. 
App.—Texarkana 1996, pet. ref’d) (stating that improper comment was made 
briefly and only once and, therefore, was likely to have had little effect on 
the jury); Holmes v. State, 962 S.W.2d 663, 675 (Tex. App.—Waco 1998, 
pet. ref’d, untimely filed) (holding that improper jury argument was harmless 
when State did not repeat the argument, and it offered overwhelming evidence 
establishing guilt).
        Appellant 
relies on several cases to support his argument that this improper comment 
warrants reversal.[1]  However, those cases 
involved egregious accusations, which we conclude is not the case here.  
Therefore, while we do not condone the complained-of argument, we hold that, 
when considered in context, the argument did not amount to severe misconduct on 
the part of the State.
        The 
second factor is easily dispensed with, as no curative instruction was given 
because the objection was overruled.  The third factor favors the 
State.  As was discussed under our analysis of the factual sufficiency of 
the evidence, there was ample evidence, absent this comment by the State, that 
Appellant possessed crack cocaine with the intent to deliver.
        After 
analyzing the improper statement, we conclude that the error did not affect 
Appellant’s substantial rights and that it was, therefore, harmless.  
Thus, we overrule Appellant’s point.
CONCLUSION
        Having 
overruled all Appellant’s points, we affirm the trial court’s judgment.
   
   
                                                          ANNE 
GARDNER
                                                          JUSTICE
   
 
PANEL 
B:   HOLMAN, GARDNER and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
February 17, 2005


NOTES
1.  
See Gomez v. State, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985) 
(finding accusation that defense manufactured evidence constituted reversible 
error); Fuentes v. State, 664 S.W.2d 333, 335-37 (Tex. Crim. App. 1984) 
(concluding argument that defense counsel was “in bad faith like usual” and 
that evidence of police misconduct was “garbage” warranted reversal); 
Bell v. State, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981) (deciding 
statement that defense counsel’s duty is to get his client off, even if that 
means putting on witnesses who are lying, warranted mistrial); Lewis v. State, 
529 S.W.2d 533, 534 (Tex. Crim. App. 1975) (finding statement that defense 
counsel had not taken oath to seek justice and that they did not want truth to 
come out required reversal); Boyde v. State, 513 S.W.2d 588, 591 (Tex. 
Crim. App. 1974) (determining statement by prosecutor that the jury would never 
find him accepting stolen money and stolen merchandise as a fee and “trying to 
get a murder–“ constituted reversible error); Bray v. State, 478 
S.W.2d 89, 89-90 (Tex. Crim. App. 1972) (holding that prosecutor’s comment 
that he was grateful he did not have to make his living representing the likes 
of defendant constituted reversible error); Jones v. State, 205 S.W.2d 
590, 592-93 (Tex. Crim. App. 1947) (deciding argument that defense counsel had 
fabricated the defense required reversal).  But see Mosley, 983 
S.W.2d at 258-60 (holding that closing statement that implied defense counsel 
wanted to divert jury from the truth was “mildly inappropriate” and was not 
reversible error because the statement did not directly accuse defense counsel 
of lying or manufacturing evidence); Brantley v. State, 48 S.W.3d 318, 
330-31 (Tex. App.—Waco 2001, pet. ref’d) (finding that statements that 
defense counsel wanted jury to “chase rabbits” and warning jury to not fall 
for defense “tricks” were harmless).