MALONE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-235-CR

KATHERINE RENEE MALONE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Katherine Renee Malone appeals her conviction and seven-year sentence for possession of a controlled substance with intent to deliver.  In her first two issues, appellant contends that the evidence is legally and factually insufficient to support her conviction.  In appellant’s third and fourth issues, she contends that the trial court abused its discretion by allowing Ermino Amaya and Aaron Fuoco to testify regarding an extraneous offense during the guilt-innocence phase in violation of rule 403 and 404(b) and that the testimony was not sufficiently corroborated under the accomplice-witness rule.  We affirm.

II.  Background Facts

On April 12, 2004, Detective Jeff Davis, a Denton police officer in the narcotics division, arrested Amaya for possession of marijuana and firearms by a felon.  After being arrested, Amaya gave Detective Davis appellant’s and Jeff Barton’s (J.B.) names and told Detective Davis that these are people from whom he could purchase drugs.  Detective Davis told Amaya to make some phone calls to appellant and J.B. to see if it would be possible to buy drugs from them and then to report back to Detective Davis.  On April 25, 2004, Amaya called and told Detective Davis that he (Amaya) had a “pretty firm plan” and that he could probably arrange for the drug buy to happen the next day.  Detective Davis then told Amaya to call him in the morning, and they would meet at a location and make a recorded phone call to appellant and J.B. regarding the drug transaction.  On April 26, 2004, Detective Davis met Amaya at a car wash, and Amaya made a call to appellant and J.B. that was recorded on a digital recorder.  When Amaya called appellant and J.B., they were with Fuoco, the supplier of the drugs, at a mechanic’s shop where the drug buy was supposed to occur.  In one of the recorded phone calls, Detective Davis heard appellant give Amaya directions to the mechanic’s shop.  After listening to the phone calls, Detective Davis called the officers that had set up surveillance at the mechanic’s shop and told them to arrest appellant, J.B., and Fuoco.  When the officers arrested them, they found methamphetamine and drug paraphernalia on Fuoco.  

On June 16, 2005, the jury found appellant guilty of possession of a controlled substance with intent to deliver and assessed her punishment at seven years in the Institutional Division of the Texas Department of Criminal Justice. 

III.  Legal and Factual Sufficiency

In her first and second issues, appellant contends that the evidence is legally and factually insufficient to prove that she committed the offense of possession of a controlled substance with intent to deliver.

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact-finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact-finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact-finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

A person commits the offense of possession of a controlled substance with intent to deliver if the person “knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1.”  
Tex. Health & Safety Code Ann.
 § 481.112(a) (Vernon 2003).  Section 7.02(a)(2) of the penal code states that “[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.”  
Tex. Penal Code Ann.
 § 7.02(a)(2) (Vernon 2003).

To convict a defendant for possession of a controlled substance, the State must show that the defendant knowingly or intentionally possessed the controlled substance.  
Seals v. State
, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005).  “[A]n accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly.”  
Brown v. State
, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Further, intent to deliver can be proven by circumstantial evidence.  
See
 
Jordan v. State
, 139 S.W.3d 723, 726 (Tex. App.སྭFort Worth 2004, no pet.); 
Rhodes v. State
, 913 S.W.2d 242, 251 (Tex. App.སྭFort Worth 1995), 
aff'd
, 945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997); 
Williams v. State
, 902 S.W.2d 505, 507 (Tex. App.སྭHouston [1st Dist.] 1994, pet. ref'd); 
Reece v. State
, 878 S.W.2d 320, 325 (Tex. App.སྭHouston [1st Dist.] 1994, no pet.).  Courts have considered several factors in determining intent, including:  (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. 
Jordan
, 139 S.W.3d at 726;
 Williams
, 902 S.W.2d at 507; 
Reece
, 878 S.W.2d at 325.  Expert testimony may be introduced to prove intent to deliver.  
See Bryant v. State
, 997 S.W.2d 673, 675 (Tex. App.སྭTexarkana 1999, no pet.); 
Rhodes
, 913 S.W.2d at 251; 
Mack v. State
, 859 S.W.2d 526, 529 (Tex. App.སྭHouston [1st Dist.] 1993, no pet.); 
Branch v. State
, 833 S.W.2d 242, 244-45 (Tex. App.སྭDallas 1992, pet. ref'd).

Appellant is correct in stating that proof that an accused was present at the crime scene, standing alone, is insufficient.  
Wooden v. State
, 101 S.W.3d 542, 546 (Tex. App.—Fort Worth 2003, pet. ref’d); 
Scott v. State
, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref’d).  However, while presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant.  
Beardsley v. State
, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); 
Valdez v. State
, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1981)(op. on reh’g). 

In this case, the jury was authorized to find appellant guilty under the law of parties.  Evidence is legally sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement.  
Wooden
, 101 S.W.3d at 546; 
see also 
Tex. Penal Code Ann.
 § 7.02(a)(2).  The evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose.  
Wooden
, 101 S.W.3d at 546; 
Brooks v. State
, 580 S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979). Circumstantial evidence may be used to prove party status.  
Escobar v. State
, 28 S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref’d).  

Whether an accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by the actions of the accused that show an understanding and common design to commit the offense.  
Id.  
In determining the sufficiency of the evidence to show an appellant’s intent and faced with a record that supports conflicting inferences, we must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution.  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)
; Escobar
, 28 S.W.3d at 774.

C.  Applicable Facts

At trial, Detective Davis testified that he arrested Amaya on April 12, 2004, for possession of marijuana and possession of firearms by a felon.  He stated that he interviewed Amaya after he was arrested and that Amaya said that he thought he knew people from whom Amaya could purchase narcotics from and agreed to help the police in arresting the individuals.
(footnote: 2)  Amaya then gave Detective Davis the names and information of appellant and J.B. as possible individuals for the drug purchase.  Detective Davis stated that he told Amaya to make phone calls to appellant and J.B. to see if they would sell Amaya the drugs and then to report back to him.  Detective Davis testified that after speaking with J.B. and appellant, Amaya called him on April 25, 2004, and said that he had a pretty firm plan and that he could probably buy drugs the next day, April 26.  Amaya stated that he had talked to J.B. and appellant, in unrecorded phone calls, over the previous several days to possibly buy a quarter ounce of methamphetamine and six pounds of marijuana.  After talking to Amaya, Detective Davis told him to call back in the morning and that they would meet and make recorded phone calls to appellant and J.B.

Detective Davis stated that on April 26, he met Amaya at a carwash down the street from where Amaya was staying, and made the recorded phone calls.  He stated that after listening to the phone calls, he told William Scott, a lieutenant with the Denton County Sheriff’s Office, to arrest appellant, J.B., and Fuoco for drug possession.  Detective Davis said that he believed appellant was involved after listening to the phone conversations because she was assisting in the transaction.  He said that in the first recorded phone call, appellant’s name was not mentioned, but that in the second recorded phone call, appellant gave Amaya directions to the mechanic’s shop.  Detective Davis stated that appellant knew that a drug transaction was about to take place. Lieutenant Scott testified that on April 26, 2004, he set up surveillance at appellant’s mother’s house and that it was his understanding that there was going to be a drug deal in Lewisville or Denton that day.  Lieutenant Scott stated that he was in an undercover vehicle by himself and that Deputy Sheriff Shawn Clary was in another undercover vehicle.  He said that Randy Robinson, a Denton county sheriff’s deputy, was also involved in the surveillance of the house.  Lieutenant Scott stated that while they were watching the house, appellant, J.B., and Fuoco got into a car with two unidentified females and drove to the mechanic’s shop.  He testified that he talked with Detective Davis who told him that appellant’s car was at the mechanic’s shop and that appellant could not get the car out until the drug transaction had occurred because there was a mechanic’s bill against the car. 

Lieutenant Scott stated that Detective Davis told him that Fuoco, the one with the backpack, had the drugs.  He said that he waited to arrest appellant, J.B., and Fuoco until the three had congregated in front of the mechanic’s shop together.  Once the three had gathered in front of the building, Lieutenant Scott gave the signal for two Lewisville Police Department marked cars and three undercover cars to drive to the mechanic’s shop to arrest appellant, J.B., and Fuoco.  He stated that methamphetamine was found in Fuoco’s right front pocket and that electronic scales and drug paraphernalia were found in his backpack.  

Amaya testified that he was arrested in 2004 by Detective Davis and was charged with possession of guns by a felon and marijuana.  He stated that after being arrested, he agreed to cooperate with Detective Davis in arresting other drug dealers.  Amaya stated that he called appellant’s mother’s cell phone within a week after being arrested, told appellant he wanted to buy some “ice,” and appellant said that she could get it for him.  He stated that he had met appellant to buy drugs while J.B. was in jail.

Amaya testified that he talked to appellant and J.B. three or four times between his initial phone call to appellant and April 26 about purchasing the methamphetamine.  Specifically, Amaya stated that he talked with appellant and J.B. about purchasing a quarter ounce of methamphetamine and that the cost of the methamphetamine would be $300.  He stated that the drug transaction was initially supposed to take place in Denton but that the location changed to a mechanic’s shop in Lewisville because appellant’s car was being fixed at the mechanic’s shop and she needed money to get the car out. However, Amaya stated that the money was not going to pay for the car to get out of the shop but was strictly for buying the drugs.  Amaya made a recorded phone conversation with appellant in which appellant told him that the drug dealer was at the mechanic’s shop.

Fuoco testified that on April 26 police arrested him with appellant and J.B. because he had seven grams of methamphetamine on him that he was planning to sell to J.B.’s friend.  Fuoco stated that he had known appellant and J.B. for approximately two years before they were arrested.  He said that appellant had delivered methamphetamine to him while J.B. was in jail.

On April 26, Fuoco stated that he went to appellant’s mother’s house and talked with J.B. about what was going to happen and that appellant was there during the conversation.  He stated that while he was at the house, he showed appellant and J.B. the methamphetamine.  After approximately thirty minutes, appellant, J.B., and Fuoco went to the mechanic’s shop to wait for the buyer. However, after waiting about thirty minutes at the mechanic’s shop, appellant and Fuoco walked to her house, and J.B. continued to wait at the mechanic’s shop.  Fuoco stated that he asked appellant one or two times while they were at the house when the buyer was going to arrive.  After approximately five minutes of being at the house, appellant and Fuoco walked back to the mechanic’s shop, and appellant went to a phone and called the buyer to find out what was taking him so long to get to the shop.  After appellant got off the phone, she told Fuoco that the buyer was on his way. 

Fuoco stated that he did not like testifying against appellant.  He stated that he thought appellant was there to get her car out of the mechanic’s shop and because she did not trust J.B. with her car.  Fuoco testified that he only dealt with J.B., not appellant, concerning the drug transaction.  However, Fuoco testified that appellant knew that he was there to sell methamphetamine. He stated that he was under the impression that after the drug transaction, appellant was going to give him a ride back to his house.  Fuoco said that appellant did not assist or encourage him to put the methamphetamine in his pocket. 

D.  Analysis

Appellant argues that the evidence shows that she was never in possession of the methamphetamine and that she was not involved in arranging the drug transaction.  The issue is whether appellant acted with intent to assist the commission of the offense by aiding Fuoco’s possession with intent to deliver the methamphetamine.  

The State showed that Amaya gave appellant’s name to Detective Davis as someone from whom he could purchase methamphetamine.  The State demonstrated that appellant was present at the scene and that she went to the mechanic’s shop with J.B. and Fuoco.  The evidence further shows that appellant made a phone call to Amaya, the buyer, to find out when he was going to arrive at the mechanic’s shop and then told Fuoco that the buyer was “on his way.”  Indeed, no evidence showed that anyone else made the phone call.  Additionally, Amaya testified that he discussed the price and quantity of the methamphetamine with both appellant and J.B. and that on April 25 he talked with appellant and J.B. three or four times regarding the drug transaction.

Detective Davis testified that he heard appellant give Amaya directions to the mechanic’s shop so that Amaya could purchase the drugs.  Detective Davis stated that after hearing the tape of the phone call, he believed that appellant was involved in the drug transaction.  Lieutenant Scott stated that he set up surveillance at the mechanic’s shop and saw appellant, J.B., and Fuoco arrive together. 

Fuoco testified that he went to appellant’s mother’s house first, showed appellant and J.B. the drugs, and then they walked to the mechanic’s shop to wait for the buyer.  Fuoco stated that after he and appellant walked back to her mother’s house, he asked her one or two times when the buyer was going to arrive.  He testified that after walking back to the mechanic’s shop, appellant went to a pay phone and called the buyer to ask what was taking him so long to get there.  After she got off the phone, appellant told Fuoco that the buyer said that he was on his way.  After reviewing the evidence, we hold that appellant’s actions imply “guilty knowledge.”  
Salazar v. State
, 95 S.W.3d 501, 505 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  

We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant possessed the methamphetamine with the intent to deliver.  Therefore, we overrule appellant’s first issue.  Additionally, when viewed neutrally, the evidence is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilty beyond a reasonable doubt.  We overrule appellant’s second issue.

IV.  Extraneous Offense

In appellant’s third and fourth issues, she contends that the trial court abused its discretion by allowing Amaya and Fuoco to testify regarding an extraneous offense during the guilt-innocence phase in violation of rules 403 and 404(b) and that the testimony was not sufficiently corroborated under the accomplice-witness rule.  

A.  Extraneous Offense Evidence

Rule 401 provides, “‘[r]elevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Tex. R. Evid.
 401.  Rule 403 states, “[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.”  
Tex. R. Evid.
 403.

Rule 404(b) provides,

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State’s case-in-chief such evidence other than that arising in the same transaction.  

Tex. R. Evid.
 404(b).

1.  Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion.  
Moses v. State
, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); 
Soto v. State
, 156 S.W.3d 131, 134 (Tex. App.སྭFort Worth 2005, pet. ref’d). That is to say, as long as the trial court’s ruling was within the zone of reasonable disagreement, the appellate court should affirm. 
 Moses, 
105 S.W.3d at 627; 
see also Montgomery v. State
, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh’g); 
Karnes v. State
, 127 S.W.3d 184, 189 (Tex. App.སྭFort Worth 2003, no pet.).  To constitute an extraneous offense, the evidence must show that a crime or bad act was committed and that the defendant was connected to it.  
Moreno v. State, 
858 S.W.2d 453, 463 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 966 (1993).

Rule 404(b) prohibits the admission of evidence of “other crimes, wrongs, or acts” in a criminal case to prove that the defendant acted in conformity with his character to commit crimes.  
Tex. R. Evid.
 404(b); 
Marc v. State
, 166 S.W.3d 767, 775 (Tex. App.སྭFort Worth 2005, pet. ref’d).  Such evidence of extraneous offenses may be admitted for other purposes, however, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  
See Moses
, 105 S.W.3d at 626; 
Nguyen v. State
, 177 S.W.3d 659, 666 (Tex. App.སྭHouston [1st Dist.] 2005, pet. filed).  The permissible uses listed in rule 404(b) of when character evidence may be used are illustrative, not exhaustive.  
Montgomery
, 810 S.W.2d at 387.  The court of criminal appeals has held that evidence of extraneous transactions may be admitted in drug possession cases whenever they tend “to prove the requisite affirmative link to the contraband.”  
Brown v. State, 
911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (quoting 
Saenz v. State
, 843 S.W.2d 24, 27 (Tex. Crim. App. 1992)).   

2.  Analysis

Appellant’s complaint relates to (1) Amaya’s testimony that he had spoken with appellant prior to the instant offense regarding the purchase of drugs and (2) Fuoco’s testimony that appellant had sold him drugs on prior occasions.  During the hearing outside the presence of the jury, appellant argued that the probative value of the evidence was outweighed by undue prejudice.  However, the trial court overruled appellant’s objection and allowed the testimony. 

Appellant’s defensive theory was that she was only present at the scene to get her car out of the shop and that she did not participate in the offense.  Appellant contends that there are no affirmative links that show that she possessed the methamphetamine with the intent to deliver.  Appellant relies on 
Carter v. State 
to support her contention that the trial court abused its discretion by admitting the extraneous offenses.  145 S.W.3d 702 (Tex. App.—Dallas 2004, pet. ref’d).  However, we determine that 
Carter
 is distinguishable from the present case.  

In 
Carter
, the defendant sold an undercover officer marijuana and crack cocaine on December 31 from a house.  
Id.
 at 705.  Two weeks later, the undercover officer and several other officers went back to the house to execute an arrest and search warrant and found three grams of cocaine in a back room.  
Id. 
at 706.  At trial, the trial court allowed the State to present testimony regarding the three grams of cocaine; however, the jury was instructed that it could consider the extraneous offense solely for determining the defendant’s intent in the case.  
Id
. at 708.  On appeal, the Dallas Court of Appeals held that the extraneous offense does not tend to make the existence of a material fact more or less probable.  
Id.
  The court stated that the defendant’s defensive theory was not that he sold the cocaine but that he “did not know it was cocaine or that he did not intend to sell it.”  
Id
.  

Here, on the other hand, appellant conceded that she was present and knew that a drug transaction was going to occur, but she did not admit that she participated in the transaction.  Because the extraneous offense evidence makes appellant’s intent to participate in the offense more probable, we hold that the trial court did not abuse its discretion by admitting the extraneous offenses under rule 404(b).  
Tex. R. Evid.
 404(b); 
see Payton v. State
, 830 S.W.2d 722, 730 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (holding evidence that defendant sold drugs two days before arrest was relevant to show he possessed drugs with intent to deliver).  

We must now determine whether the trial court abused its discretion by admitting the evidence in light of appellant’s objection on relevancy under rule 403.  
Tex. R. Evid.
 403; 
see Montgomery
, 810 S.W.2d at 388.  Rule 403 favors the admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial.  
Montgomery
, 810 S.W.2d at 389.  In 
Santellan v. State
, the court of criminal appeals restated the factors discussed in 
Montgomery
 that should go into the balancing test:  

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable--a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury “in some irrational but nevertheless indelible way”;

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; [and]

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.  

939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted); 
Marc
, 166 S.W.3d at 776. 

We now turn to an examination of the factors set out in 
Santellan
.  Here,  evidence that appellant had sold drugs prior to her April 26 arrest is probative of the fact that she intended to participate in the possession and delivery of the drugs.  Amaya’s and Fuoco’s testimony regarding the extraneous offenses help to rebut the defensive theory that appellant was merely present at the scene and did not participate in the anticipated drug transaction.  Additionally, the extraneous act is not more heinous than the charged offense and therefore the potential for the extraneous offense to impress the jury in an irrational way is slight.  Further, the State did not spend a lot of time introducing the extraneous offenses to the jury.  The State did not mention the extraneous offenses in its opening or closing arguments.  In fact, the extraneous offenses were only discussed for approximately six out of 109 pages of testimony.  However, there was a need for the extraneous offense evidence to be introduced because appellant questioned the State’s affirmative link between appellant and the offense of possession of methamphetamine with the intent to deliver.

Finally, the trial court provided the jury with a limiting instruction that the extraneous offenses should only be used as an aid to help the jury determine whether or not appellant participated in the offense.  We conclude that the trial court correctly determined that the probative value of the evidence was not substantially outweighed by its prejudicial effect.  We hold that the trial court did not abuse its discretion by admitting the extraneous offense evidence under rule 403. 

B. Accomplice Witness Testimony

1.  Standard of Review

Article 38.14 of the code of criminal of procedure provides that “[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.”
  Tex. Code Crim. Proc. Ann 
art. 38.14 (Vernon 2005).  In conducting a sufficiency review under the accomplice-witness rule, the reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to ascertain if there is any evidence that tends to connect the accused with the commission of the crime.
(footnote: 3)  
Solomon v. State
, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); 
Hernandez v. State
, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997).  “Tendency to connect” rather than rational sufficiency is the standard:  the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt.  
Solomon
, 49 S.W.3d at 361; 
Cathey v. State
, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), 
cert. denied
, 528 U.S. 1082 (2000).  Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense.  
Cathey
, 992 S.W.2d at 462.  The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards.  
Id.
 at 462-63.  To satisfy the accomplice-witness rule there simply needs to be other evidence tending to connect the accused to the commission of the offense.  
See id.
 at 463.

2.  Analysis

During oral arguments, appellant conceded that Fuoco was not an accomplice; therefore, our sole inquiry is to determine whether the trial court abused its discretion by allowing Amaya to testify during the guilt-innocence phase that, prior to the present offense, he had spoken with appellant regarding the purchase of drugs seven to eight times on the telephone, that he had asked appellant if she could provide methamphetamine to his brother, and that appellant stated that she could provide the methamphetamine.

At trial, Amaya testified that before appellant and J.B. were arrested, Amaya had called appellant seven or eight times to purchase methamphetamine for his brother.  He stated that when he called appellant, she indicated that she would be able to provide the methamphetamine.  The State presented no other evidence regarding appellant’s agreeing to sell Amaya’s brother methamphetamine.  Appellant argues that Amaya’s testimony should have been corroborated because Amaya could be charged with delivery of methamphetamine as an accomplice to the extraneous offense.

As stated above, section 481.112 provides that “a person commits an offense if the person 
knowingly manufactures, delivers, or possesses with intent to deliver 
a controlled substance.” 
Tex. Health & Safety Code Ann.
 § 481.112(a) (emphasis added).  Section 481.002(25) defines “manufacture” as “the production, preparation, propagation, compounding, conversion, or processing of a controlled substance.” 
 Id.
 § 481.002(25) (Vernon Supp. 2005).  Delivery is defined as “to transfer, actually or constructively, to another a controlled substance, counterfeit, or drug paraphernalia, regardless of whether there is an agency relationship.  This term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.”  
Id.
 § 481.002(8).  Possession is defined as “actual care, custody, control, or management.”  
Id
. § 481.002(38).  

Here, Amaya did not testify that he manufactured the methamphetamine with appellant nor did he testify that he participated in the delivery of the methamphetamine.  Additionally, he did not testify that he had actual care, custody, control, or management of the methamphetamine.  Amaya simply stated that he called appellant for his brother and that appellant said that she could provide his brother with methamphetamine.  Amaya did not testify that his brother 
actually
 
bought
 the methamphetamine from appellant.  Thus, we determine that Amaya was not an accomplice to the extraneous offense because he never testified that he participated with appellant in the delivery of methamphetamine to Amaya’s brother.  Therefore, we hold that the trial court did not err by refusing to require the State to corroborate Amaya’s testimony regarding appellant’s agreeing to provide his brother methamphetamine.  
See Green v. State
, 72 S.W.3d 420, 424 (Tex. App.—Texarkana 2002, pet. ref’d) (declining to address corroboration when witness was not an accomplice as a matter of law and there was “no jury finding that she was an accomplice as a matter of fact”); 
Reyna v. State
, 22 S.W.3d 655, 660 (Tex. App.—Austin 2000, no pet.) (declining to address whether the corroboration was sufficient when the witness was not an accomplice as a matter of law).  Because we determine that Amaya is not an accomplice and that the trial court did not abuse its discretion by admitting the extraneous offense evidence under rules 403 and 404, we overrule appellant’s third and fourth issues.

V.  Conclusion

Having overruled appellant’s four issues, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, HOLMAN, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: July 13, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Detective Davis told Amaya that he would make recommendations to his boss and the district attorney based on Amaya’s cooperation.

3:
The court of criminal appeals has declined to address the issue of whether accomplice testimony must be corroborated during the guilt-innocence phase at trial.  
See Rice v. State
, 605 S.W.2d 895, 903 n.1 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh’g).